No. 18-55635

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DENISE DANIELS AND THE MOODSTERS COMPANY,
*Plaintiffs-Appellants,*

v.

THE WALT DISNEY COMPANY; DISNEY ENTERPRISES, INC.;
DISNEY CONSUMER PRODUCTS AND INTERACTIVE MEDIA INC.;
DISNEY INTERACTIVE STUDIOS, INC.; DISNEY SHOPPING, INC.;
PIXAR,
*Defendants-Appellees*

*On Appeal from the United States District Court for the Central District of California,
No. 2:17-cv-04527-PSG-SK, Honorable Philip S. Gutierrez*

## APPELLANTS' REPLY BRIEF

ROBINS KAPLAN LLP
Ronald J. Schutz
Patrick M. Arenz
Brenda L. Joly
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

*Attorneys for Plaintiffs-Appellants Denise
Daniels and The Moodsters Company*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

SUMMARY .............................................................................................. 1

ARGUMENT ............................................................................................ 2

I.    Disney failed to demonstrate that Moodsters Co.'s copyright claims are implausible. ........................................................... 2

    A.    Disney's opposition avoids the full spectrum of this Court's precedent on character copyrights. ........................ 2

    B.    Disney's contention that the district court could decide Moodsters Co.'s copyright claims entirely "as a matter of law" is incorrect. ........................................................... 5

        1.    Disney failed to address Moodsters Co.'s well-pled allegations of sufficient delineation and distinctiveness. ........................................................ 8

        2.    Disney's counter-factual argument about individual Moodsters confirms that a full record is necessary to address this fact-intensive issue. ...... 10

            a.    Moodsters Co. has waived no argument about any individual Moodsters character. .... 10

            b.    Disney's fact-based arguments do not support the district court's decision to dismiss Moodsters Co.'s individual character claims. ...................................... 12

    C.    Disney's opposition continues to ignore basic principles of copyright law. ........................................... 15

        1.    Disney flouts the importance of originality in copyright law. ...................................................... 15

        2.    Disney's support for the district court's fame or persistence-based analysis for copyright protection conflicts with the plain language of the Copyright Act and misreads *Towle*. .................. 17

D.    Disney's new and conclusory argument regarding the "story being told" standard fails to show an implausible claim.............................................................. 21

II.    The district court should not have dismissed Daniels' breach of implied-contract claim. ........................................................ 22

A.    The publication date on the bible registration form does not establish the material was unconditionally publicly distributed before an implied contract with Disney arose................................................................... 22

B.    Disney's arguments also misconstrue the consideration for a *Desny* contract and ignore that even public availability of ideas does not prevent an implied contract............................................................. 25

C.    Disney's statute of limitations alternate ground for affirmance also fails. ....................................................... 29

CONCLUSION ............................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander v. Metro-Goldwyn Mayer Studios Inc.*,
2017 U.S. Dist. LEXIS 214497 (C.D. Cal. Aug. 14, 2017) .................28, 29

*Alexander v. Murdoch*,
2011 WL 2802899 (S.D.N.Y. May 27, 2011).............................................. 3

*Anderson v. Stallone*,
11 U.S.P.Q.2d 1161 (C.D. Cal. 1989)..............................................9, 10, 30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... 6

*Bach v. Forever Living Prods. U.S., Inc.*,
473 F. Supp. 2d 1127 (W.D. Wash. 2007) ............................................... 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 6, 7

*Benay v. Warner Bros. Entm't, Inc.*,
607 F.3d 620 (9th Cir. 2010) ..............................................................29, 30

*Blaustein v. Burton*,
88 Cal. Rptr. 319 (Cal. Ct. App. 1970) ...............................................28, 30

*Campanelli v. Bockrath*,
100 F.3d 1476 (9th Cir. 1996)..................................................................... 4

*Chandler v. Roach*,
319 P.2d 776 (Cal. Ct. Ap. 1957)............................................................. 27

*DC Comics v. Towle*,
802 F.3d 1012 (9th Cir. 2015)............................................................*passim*

*Desny v. Wilder*,
299 P.2d 257 (Cal. 1956).........................................................25, 27, 28

iii

*Dezendorf v. Twentieth Century-Fox Film Corp.*,
  99 F.2d 850 (9th Cir. 1938) ..............................................................13, 15

*Elliott v. Smith & Nephew*,
  2013 U.S. Dist. LEXIS 59072 (D. Id. Apr. 15, 2013) .................................. 6

*Faris v. Enberg*,
  158 Cal. Rptr. 704 (Cal. Ct. App. 1979)................................................... 28

*Feltner v. Columbia Pictures Television, Inc.*,
  523 U.S. 340 (1998) .................................................................................5

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
  772 F. Supp. 2d 1135 (C.D. Cal. 2008).................................................... 15

*Funky Films, Inc. v. Time Warner Entm't Co.*,
  462 F.3d 1072 (9th Cir. 2006).....................................................................3

*Gallagher v. Lions Gate Entm't Inc.*,
  2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ......................................... 3

*Griffin v. Caldwell*,
  2016 U.S. Dist. LEXIS 5539 (E.D. Cal. Jan. 14, 2016) ............................. 6

*Halicki Films, LLC v. Sanderson Sales & Marketing*,
  547 F.3d 1213 (9th Cir. 2008).............................................................*passim*

*Kamar Int'l, Inc. v. Russ Berrie and Co.*,
  657 F.2d 1059 (9th Cir. 1981).................................................................. 16

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988. 1003 (9th Cir. 2018) ......................................................... 24

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ................................................................... 12

*McCormick v. Sony Pictures Entm't*,
  2009 WL 10672263 (C.D. Cal. July 20, 2009) ........................................... 3

*Merrick v. Paul Revere Life Ins. Co.*,
  500 F.3d 1007 (9th Cir. 2007)................................................................. 11

*North Coast Indus. v. Jason Maxwell, Inc.*,
    972 F.2d 1031 (9th Cir. 1992) .................................................. 15

*Olson v. Nat'l Broad. Co.*,
    855 F.2d 1446 (9th Cir. 1988) ............................................... 3, 9

*Rattlesnake Coalition v. U.S. E.P.A.*,
    509 F.3d 1095 (9th Cir. 2007) .................................................. 11

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) ............................................... 2, 3

*Skidmore v. Led Zeppelin*,
    905 F.3d 1116 (9th Cir. 2018) .................................................. 14

*Slocum v. N.Y. Life Ins. Co.*,
    228 U.S. 364 (1913) ................................................................ 5

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .................................................. 6

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ................................................... 13

*Turner v. Cain*,
    647 Fed. Appx. 357 (5th Cir. 2016) ......................................... 6

*Walt Disney Prods. v. Air Pirates*,
    345 F. Supp. 108 (N.D. Cal. 1972) ......................................... 22

*Walt Disney Prods. v. Air Pirates*,
    581 F.2d 751 (9th Cir. 1978) ............................................2, 3, 4

*Williams v. Woodford*,
    384 F.3d 567 (9th Cir. 2004) .................................................. 11

**Statutes**

17 U.S.C. §101 .............................................................17, 23

17 U.S.C. §103(b) ............................................................ 17

17 U.S.C. §302(a) ............................................................ 17

v

**Rules**

Fed. R. Civ. P. 12................................................................................*passim*

**Other Authorities**

H.R. Rep. No. 94-1476 (1976) ...................................................... 23

**SUMMARY**

Disney's answering brief confirms that the district court's decision was unprecedented. Never before has a court dismissed on a Rule 12 motion the merits of a character copyright—a point of law Disney concedes in its brief by failing to identify any case. The reason no such precedent exists is that character copyrightability is a "fact-intensive issue," as this Court held in *Halicki*. That *Towle* resolved the issue over the Batmobile character on summary judgment based on "undisputed facts" does nothing to change this standard.

Disney's arguments—both to the district court and this Court—reflect the fact-intensive nature of this issue. Moodsters Co. has alleged that no characters ever existed before The Moodsters that expressed the particularized traits and attributes described in the Amended Complaint. Neither the district court nor Disney has proven that untrue. Instead, they conclude without factual support that the characters are "stock characters" and "generic, stereotypical." Moodsters Co. categorically disputes those characterizations, and should have the opportunity to call witnesses and offer documents to rebut them. The plaintiffs in this Court's four character copyright cases on graphical characters *all* had that opportunity. Moodsters Co.'s appeal does not require the Court to overturn *Towle* or any other precedent. Reversal here just requires

1

a proper application of this Court's character copyright law within the established framework for Rule 12 motions.

The dismissal of the implied contract claim was likewise erroneous. The district court's conclusion that Daniels had unconditionally distributed the ideas for The Moodsters to the public before sharing them with Disney is an improper finding of fact belied by the allegations of the complaint. Yet even if Daniels had made her ideas publicly available to some others, the consideration for the contract would not have been destroyed. The district court also did not accept Disney's arguments about the statute of limitations, and neither should this Court.

## ARGUMENT

I. **Disney failed to demonstrate that Moodsters Co.'s copyright claims are implausible.**

A. **Disney's opposition avoids the full spectrum of this Court's precedent on character copyrights.**

Disney views *Towle* in isolation and interprets it against this Court's earlier precedent that *Towle* embraced. Mickey Mouse and the Batmobile are protected characters. *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751 (9th Cir. 1978); *DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015). A magician in standard magician garb who performs and reveals magic tricks is not protected. *Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003). And in between these

bookends, this Court has determined that a fact issue exists over copyright protection of a Ford car that does not speak or emote. *Halicki Films, LLC v. Sanderson Sales & Marketing*, 547 F.3d 1213, 1224-25 (9th Cir. 2008). So, a fundamental question on this appeal is where The Moodsters fall on this spectrum, recognizing also that not one of these earlier cases involved a Rule 12 motion. The animated, original Moodsters characters, combined with the preliminary stage here, clearly place The Moodsters closer to *Air Pirates* and *Halicki* than *Rice*. Disney's unwillingness to engage with precedent other than *Towle* ignores this context.

Disney does not even cite *Air Pirates* anywhere in its brief. Disney overlooks this important precedent, focusing instead on cases about literary scripts that addressed substantial similarity for infringement. For instance, Disney relies on *Funky Films, Gallagher, Olson, McCormick*, and *Alexander* to suggest that characters are "seldom" protected. Disney Br. at 23-25, 39. But none of these cases involved an animated or graphical character.[1] Instead, they all address literary characters from screenplays, which this Court has long held "ordinarily are not copyrightable." *Air Pirates*, 581 F.2d at 755. *Air Pirates*

---

[1] *See generally Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072 (9th Cir. 2006); *Gallagher v. Lions Gate Entm't Inc.*, 2015 WL 12481504 (C.D. Cal. Sept. 11, 2015); *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446 (9th Cir. 1988); *McCormick v. Sony Pictures Entm't*, 2009 WL 10672263 (C.D. Cal. July 20, 2009); *Alexander v. Murdoch*, 2011 WL 2802899 (S.D.N.Y. May 27, 2011).

dispensed with that notion for animated characters, like The Moodsters, as this Court should do with Disney's argument here. *Id.*

*Air Pirates* also undercuts Disney's reliance on Congress' Register Report from 1965. Disney Br. at 24. In *Air Pirates*, this Court explained that the Copyright Act includes "protection for 'all the copyrightable component parts of the work copyrighted,'" like characters. 581 F.2d at 772. That Congress found it "unnecessary," even years before *Air Pirates*, to create a separate class for characters does not support Disney's insinuation that copyright law only protects characters in rare circumstances "when considered apart from the work in which they appear." Disney Br. at 24.

Finally, Disney's effort to discount the Court's recognition in *Halicki* of the "fact-intensive" nature of copyright protection fails for three reasons. *See* Disney Br. at 34. First, this Court embraced and approved *Halicki* in *Towle*, it did not reject or overrule it. *See Towle*, 802 F.3d at 1019-21. Second, that this Court remanded "for fact-finding" is incompatible with the district court deciding here that the Moodsters are not protected on a Rule 12 motion because courts make no factual findings on the pleadings. *See Campanelli v. Bockrath*, 100 F.3d 1476, 1484 (9th Cir. 1996) (finding it impermissible to "play factfinder at the 12(b)(6) stage"). Third, Disney ignores that the district court in *Halicki* decided on remand, after more briefing from the parties, that it had to

submit this fact issue to the jury to resolve. Opening Br. at 37.[2] That neither this Court nor the district court could determine whether an inanimate car is protected on a summary judgment record—which included the underlying movie—underscores that the district court erred by deciding The Moodsters' status *on the pleadings*. Moodsters Co. should have its opportunity to develop and offer its case, just as this Court and the district court ensured the plaintiff would in *Halicki*.

**B.** **Disney's contention that the district court could decide Moodsters Co.'s copyright claims entirely "as a matter of law" is incorrect.**

Disney's opposition embraces what it received at the district court: trial by pleading. But neither Disney nor the district court offered any relevant authority for this type of shortcut. *Towle* is not. Instead, this Court accepted the routine premise in *Towle* that summary judgment—not a motion to dismiss—is appropriate based on "undisputed facts." 802 F.3d at 1022-23. Disney has still failed to identify a single case deciding the validity of a character copyright on

---

[2] Disney minimizes Moodsters Co.'s observation that the Seventh Amendment requires juries to resolve fact issues in copyright case. *See, e.g.*, Disney Br. at 33-34. But Disney does not respond to the Supreme Court's holding in *Feltner v. Columbia Pictures Television, Inc.* that the Seventh Amendment applies to copyright claims. 523 U.S. 340, 348-49 (1998). And the Seventh Amendment "requires that questions of fact in common law actions shall be settled by a jury, and that the court shall not assume, directly or indirectly, to take from the jury or to itself such prerogative." *Slocum v. N.Y. Life Ins. Co.*, 228 U.S. 364, 424 (1913). Neither the Seventh Amendment nor Rule 12 permits the district court to decide the underlying fact issues in Moodsters Co.'s copyright claims.

a Rule 12 motion. This Court should follow its direction in *Halicki* and *Towle*, and allow Moodsters Co. the opportunity to present its case on a full record.

Indeed, the most basic issue in front of the district court was whether Moodsters Co. pled a plausible claim. Moodsters Co. advocated for that standard to the district court. *See, e.g.*, ER68 ("This record sets forth a plausible claim, and Moodsters Co. should have the opportunity to develop its case for the trier of fact to decide on the merits."). And Moodsters Co. advocated for the same plausibility standard here too: "The only proper analysis at the pleading stage is whether Moodsters Co. alleged a plausible claim, even if it is not probable." Opening Br. at 21 (citing post-*Twombly* decision *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011)). Disney's suggestion that Moodsters Co. argued for an improper Rule 12 standard lacks any merit. *Cf.* Disney Br. at 32.[3]

Disney also misleading suggested that the "district court could not have erred by applying *Twombly*." Disney Br. at 32. The district court did not apply

---

[3] Even after *Twombly* and *Iqbal*, courts still disfavor dismissing a plaintiff's claims on the merits on Rule 12. *See, e.g., Turner v. Cain*, 647 Fed. Appx. 357, 361 (5th Cir. 2016) ("motions to dismiss under Rule 12(b)(6) are 'viewed with disfavor and [are] rarely granted'"); *Griffin v. Caldwell*, 2016 U.S. Dist. LEXIS 5539, at *6 (E.D. Cal. Jan. 14, 2016); *Elliott v. Smith & Nephew*, 2013 U.S. Dist. LEXIS 59072, at *5 (D. Id. Apr. 15, 2013) ("Because a primary objective of the legal system 'is to obtain a judgment on the merits, rather than a dismissal based on the pleadings,' motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) are generally viewed with disfavor.").

*Twombly*, and made no plausibility analysis. Instead, the district court served as the trier of fact and concluded on an empty record that "*The Moodsters* do not meet the Ninth Circuit's rigorous test for granting independent copyright protection to characters." ER19; *see also* ER1-10. The district court's analysis was not about plausibility, it was on the merits.

Contrary to Disney's suggestion now, the district court ignored many fact issues when it reached its decision. *See, e.g.*, Disney Br. at 23. The Amended Complaint describes detailed traits and attributes for The Moodsters ensemble and each individual character. *See* ER72-159*, e.g.* at ¶¶52-59, 143, 205, 242, 279, 315. Moodsters Co. also alleged that no ensemble of characters, or individual characters, had expressed these combinations of traits and attributes before The Moodsters. *See id.* ¶¶75-81, 96-105, 163-165, 179-192. And The Moodsters identified a wide range of options to express the idea of single-emotion characters, like the number of emotions, the particular emotion, and the anthropomorphic nature for each character, among others. *See id.* ¶¶179-192. These particularized allegations all present factual issues that underlie any proper analysis of character copyrightability. Yet the district court considered none of them, even though it needed to accept these allegations as true and draw inferences in Moodsters Co.'s favor.

The district court's decision to deny copyright protection also cannot stand on the merits. Disney offers no response to the traits and attributes that presented a triable—not just plausible—claim in *Halicki*. *See, e.g.*, Opening Br. at 37. That a thematic "unicorn object," like an inanimate car with intangible qualities like "strength, talent, and endurance," may qualify as a copyrighted character confirms that Moodsters Co.'s original, concrete, and expressive characters state a plausible claim that copyright law protects them as well. Neither the district court's decision, nor Disney's argument now, offers any response to *Halicki* otherwise.

### 1. Disney failed to address Moodsters Co.'s well-pled allegations of sufficient delineation and distinctiveness.

Disney tries to defend the dismissal of Moodsters Co.'s ensemble claim without referencing a single paragraph in its well-pled complaint. *See* Disney Br. at 44-45. Disney ignores, as did the district court, Moodsters Co.'s detailed allegations of The Moodsters' combination of expressive traits that made this ensemble original, unlike any set of characters that came before, and sufficiently delineated and distinctive. *Cf. id. with* Opening Br. at 28 (quoting ER101 ¶143), 32. Disney also failed to address, like the district court, Moodster Co.'s specific allegations that The Moodsters ensemble was not a set of stock characters. *Cf.* Disney Br. at 44-45 *with* Opening Br. at 31-32 (citing ER 106-108 ¶¶159-64, ER110-116 ¶¶178-92). Quite simply, Moodsters Co.'s

allegations—which the Court must accept as true at this stage—establish an undisputed record that The Moodsters characters had never been done before. That has to suffice to state a plausible claim.

Rather than address Moodsters Co.'s particularized allegations, Disney relies on two cases that do not support the district court's decision. Disney first relies on *Olson*. Disney Br. at 44. But *Olson* addressed a literary script, and thus characters that had no physical and descriptive qualities that *Air Pirates* found so fundamental. *See* 855 F.2d at 1448-49, 1452. Disney's repeated reliance on literary script cases is unusual because Disney elsewhere contends that cases on literary characters do not apply under *Towle*. *See* Disney Br. at 26. Even so, the plaintiff's "lightly sketched" write up in *Olson,* 855 F.2d at 1452, bears no resemblance to Moodsters Co.'s professional production of its 24-minute pilot with a $3 million investment and scientific research underlying it. *See* Opening Br. at 8-9, 29; ER81, ER101-103, ER178.[4]

Disney's reliance on *Anderson v. Stallone* does not support the district court's decision either. First, *Anderson* is yet another procedurally irrelevant decision, which the district court decided on summary judgment. 11 U.S.P.Q.2d 1161, 1165 (C.D. Cal. 1989). Second, Disney elides the fundamental difference between finding an ensemble of characters *protected* as a

---

[4] The district court in *Olson* also allowed the plaintiff to present its case at trial on a full record, *see* 855 F.2d at 1447-48, unlike here.

matter of law because no reasonable jury could find otherwise, like *Anderson* (and this Court in *Towle*) did, *id.* at 1166-67, versus deciding that no copyright protection exists as a matter of law no matter what evidence Moodsters Co. may offer, as the district court did here. *Anderson*'s relevance is limited to the recognition that an ensemble of characters may qualify for copyright protection—a point of law Disney does not contest.

### 2. Disney's counter-factual argument about individual Moodsters confirms that a full record is necessary to address this fact-intensive issue.

#### a. Moodsters Co. has waived no argument about any individual Moodsters character.

Disney's waiver argument is misplaced. Moodsters Co. challenged the district court's improper dismissal of all of Moodsters Co.'s copyright infringement claims on Disney's Rule 12(b)(6) motion. And its arguments about why the district court erred in its application of the correct standard of review on a 12(b)(6) motion, and its misapplication of precedent, applies to all character copyright claims. *See* Opening Br. at 4-5, 18-49. These arguments alone preserved for review the dismissal of all Moodsters Co.'s copyright claims. Even so, Moodsters Co. also cited detailed allegations in the Amended Complaint in the record about each individual character at issue in each of its copyright claims. *See id., e.g.*, at 8, 9, 24, 28, 33, 36. This Court requires

nothing more to preserve review of the district court's dismissal of its copyright claims. *See, e.g., Williams v. Woodford*, 384 F.3d 567, 587 n.5 (9th Cir. 2004).

The record below does not support Disney's waiver argument either. Neither of the district court's opinions addressed each count individually. ER3-8. Nor did either of Disney's motions to dismiss. *See* SER3, SER173. Moodsters Co. appropriately addressed the errors of the district court's reasoning applicable to all the individual character copyright claims, and asked this Court to reverse given the errors. *See* Opening Br*., e.g.*, at 15-16, 18-27, 33-49, 56. And Moodsters Co. specifically identified the traits and attributes that delineated each individual character in each individual count. *See* Opening Br., *e.g.* at 33 (citing ER72-295 at ¶¶198-223, 235-260, 271-297, 309-333). Thus, Moodsters Co. did not waive review of the district court's improper dismissals of any of the copyright infringement claims. *See Williams,* 384 F.3d at 587 n.5 (finding eight-sentence footnote sufficient to preserve review because "[t]he argument identifies the basis of Williams's disagreement with the district court's ruling and his requested relief from this court."); *Rattlesnake Coalition v. U.S. E.P.A.*, 509 F.3d 1095, 1100 (9th Cir. 2007). Nor should this Court use the discretionary waiver doctrine because "the appellee has not been misled and the issue has been fully explored." *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1013 (9th Cir. 2007). Moodsters Co. has waived no issue.

### b. Disney's fact-based arguments do not support the district court's decision to dismiss Moodsters Co.'s individual character claims.

Disney does not reference the district court's decision to dismiss the individual copyright claims in its argument on that subject. *See* Disney Br. at 38-42. One reason for this silence is the district court's failure to address the detailed allegations from Moodsters Co.'s complaints. Moodsters Co. detailed traits and features for the Anger character—as well as each other individual character—which showed a plausible claim that the character was distinctive, delineated, and original. *See* ER72-295 at ¶¶198-223, 235-260, 271-297, 309-333. Neither the district court nor Disney has proven any pre-Moodsters character that expressed these traits and characteristics. This undisputed record cannot support dismissal on the pleadings.

Even so, Disney's contention that the Anger character is a stock character with insufficient detail fails. To make this argument, Disney ventures outside the pleadings by relying on extrinsic evidence like dictionaries and unidentified cartoons. *See, e.g.*, Disney Br. at 41 (citing SER 209-10, 226-46, 198). But neither the district court nor this Court should consider this extrinsic evidence at this stage.[5] *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th

---

[5] Disney moved the district court to take judicial notice of these exhibits (among over 200 exhibits in total), but the district court did not do so and Moodsters Co. continues to object to those exhibits, or deciding disputed facts

Cir. 2001). Disney's argument conflicts with—although does not reference—detailed allegations in the Amended Complaint that include the character's unique characteristics, the varied options for expressing the idea for the character, and Professor Furniss' opinion about the historical background of stock characters in comparison to the Moodsters. *See, e.g.,* ER143-146 ¶¶292-297 (referring to ¶¶179-192 (ER111-116)).

This conflict emphasizes the fact-intensive nature of the issue, and the precise reason why courts do not resolve fact disputes on the pleadings. Fundamental fairness and due process require Moodsters Co. to have the opportunity to present evidence, including expert testimony, to contest Disney's extrinsic evidence and attorney argument. Indeed, this Court's precedent requires as much for arguments about *scenes a faire* and lack of originality, which Disney argues at the core. *See, e.g., Swirsky v. Carey*, 376 F.3d 841, 850 (9th Cir. 2004) ("It is inappropriate to grant summary judgment on the basis of *scenes a faire* without independent evidence, unless the allegation of *scenes a faire* is uncontested."); *Dezendorf v. Twentieth Century-Fox Film Corp.*, 99 F.2d 850, 851 (9th Cir. 1938). Moreover, Disney's general extrinsic evidence and argument fail to undermine Moodsters Co.'s specific allegations regarding the combination of its characters' unique traits and attributes. *Cf. Bach v. Forever*

without affording Moodsters Co. the opportunity to present competing evidence. ER13.

*Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1127, 1134 (W.D. Wash. 2007) ("it is the unique combination of elements that makes up a protected character"); *see also Skidmore v. Led Zeppelin*, 905 F.3d 1116, 1127 (9th Cir. 2018) (remanding for new trial where jury was not instructed that "the selection and arrangement of unprotectable elements could be copyrightable").

Disney's arguments about the Anger character's recognizability based on portions of works about The Moodsters fail as well. *See* Disney Br. 40-41. First, the district court never made the findings of fact that Disney now advances, and Moodsters Co. again emphasizes that any findings of fact on Rule 12 is improper. And for good reason: Disney's arguments are based on an incomplete record and its attorneys' inferences and arguments. These inferences, to which Disney is not entitled, contradict the allegations in the Amended Complaint and any reasonable interpretation of The Moodsters based on the full scope of work and materials. Indeed, children had no difficulty recognizing and enjoying the Anger character. *See, e.g.,* ER141 ¶285. And Disney never told Moodsters Co. that the Anger character was undeveloped following its extensive consideration of the characters. *See* ER141-142 ¶¶287-88, ER 87-89 ¶¶60-72. Professor Furniss will also opine about the Anger character's agency, which a stock character would not have.

ER142 ¶289. Ultimately, this issue, like all others here, warrants a complete record that allows Moodsters Co. the opportunity to present its case.

Finally, Disney's argument that the Anger character's name changed from "Roary" to "Rizzi" should prevent copyright protection is unfounded. *See* Disney Br. at 42. A character's name is only one of many possible elements used to help define a character. In *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, for instance, the district court found the "Betty Boop" character exhibited sufficient traits and attributes for copyright protection even before the character received her now-iconic name. 772 F. Supp. 2d 1135, 1147 (C.D. Cal. 2008). Thus, the character's name—and the later change of that name—was inconsequential to copyrightability. Disney cites no case for such a categorical position otherwise.

## C. Disney's opposition continues to ignore basic principles of copyright law.

### 1. Disney flouts the importance of originality in copyright law.

Disney remains silent about originality. Disney does not dispute that originality is the cornerstone principle underlying all copyright law. Nor does it dispute that a question over originality "is one of fact" "which must be established by proof." Opening Br. at 21 (quoting *Dezendorf*, 99 F.2d at 851, and citing *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th

Cir. 1992)). The district court was similarly quiet on these issues as well. Disney and the district court's failure to address this fundamental concept reveals their flawed analysis.

In *Kamar Int'l, Inc. v. Russ Berrie and Co.*, this Court reversed a district court's judgment for the defendant after the district court found the plaintiff's stuffed animals not copyrighted. 657 F.2d 1059 (9th Cir. 1981). This Court was particularly concerned about the district court's failure to address originality:

> In order to support its finding that the animals were not copyrighted, the court would have had to find that [plaintiff's] stuffed animals lack originality. … Nowhere, however, is the word originality used by either [defendant] or the trial court. There are no factual findings denying that [plaintiff's] toys are original. The question does not appear to have been addressed by the district court. This omission seems unusual in view of the truism that originality is the *sine qua non* of copyrightability.

*Id.* at 1061. This Court determined that "without a valid finding of lack of originality, the trial court could not conclude that [plaintiff's toy animals] were not copyrightable." *Id.* Here too, Disney and the district court have likewise ignored originality.

Nor could the district court make any such fact finding. As explained in Section I.A above, the Amended Complaint details factual allegations that no prior work before The Moodsters expressed the traits and attributes that make them so creative. *See* ER72-159 ¶¶75-81, 96-105, 163-165, 179-192. Rule 12 does not permit the district court to disregard these factual issues that underlie

the cornerstone of copyright law. Yet the district court's decision—and

Disney's defense of it—lacks any record of what came before The Moodsters,

and failed to make any findings that various expressive aspects of, or their

overall combination in, The Moodsters were not original. *See* ER1-20. Disney's

refusal to address such a significant issue in copyright law shows how

inadequate the district court's decision is.

> **2.** **Disney's support for the district court's fame or persistence-based analysis for copyright protection conflicts with the plain language of the Copyright Act and misreads *Towle*.**

Disney has not even tried to reconcile the district court's decision with

two key statutory provisions from the Copyright Act. Disney's brief omits any

reference to the Act's plain language that a copyright "subsists from its

creation" once an artist's expression is reduced to a "fixed" medium. 17

U.S.C. §302(a); 17 U.S.C. §101. Nor does Disney's brief even mention the

plain language from Section 103(b) that a future derivative work "does not

affect or enlarge the scope" of "any copyright protection in the preexisting

material." Disney offered no argument about why these provisions do not

apply to character copyrights. Of course these provisions apply here; they

apply to *all* copyrights.

A contrary holding would lead to illogical results. Under Disney's and

the district court's logic, anyone is free to copy—identically even—an original

character for at least some undefined time period, even though the traits and attributes of that original character qualify for copyright protection later on. Consider someone who viewed a limited screening of the first movie featuring Godzilla, and who then decided to make an unauthorized sequel featuring Godzilla immediately afterward. Under the district court's logic, the plagiarist would be free to do so because Godzilla was not well known enough, even though the law has uniformly recognized that Godzilla is a copyrighted character based on traits and attributes existing from its original version. This Court should not endorse absurd results like these, among others that flow from the district court's analysis.[6]

Even a careful reading of *Towle* confirms that character copyrights warrant no exception to the Copyright Act's plain language. In *Towle*, this Court recognized that any "copyright in an authorized derivative work 'must not in any way affect the scope of any protection in' the underlying work." 802 F.3d at 1024 (citations omitted). Indeed, this basic principle provided DC Comics standing to sue for infringement of the Batmobile character copyright.

---

[6] The time period in which an artist creates and distributes a character would matter as well. For instance, if fame or extent of distribution is key, then a character distributed now on Netflix or another Internet-based platform would be far more likely to obtain copyright protection than the *exact* same character that existed before cable television or Internet streaming existed. Copyright protection should depend on the originality of a character, not on unrelated technological advances.

DC Comics was the owner of that copyright because it first expressed that character in comic books. Had the existence of a copyright derived only through future derivative works, then a different entity would have had standing to sue for the defendant's infringement replicating the Batmobile as it appeared in later television and movies owned by others. *See id.* at 1023-26.

Nor is this Court's passing reference to "persistence" in *Towle* to the contrary. To start, the plain language of a statute controls even if there were a conflict. But there is not even a conflict because this Court addressed "persistence" in *Towle* by defending the proposition that characters can be copyrighted even if their physical appearance changes over time. 802 F.3d at 1020-21. What matters is that the underlying character attributes remain, like James Bond's "overt sexuality," the Batmobile's "up-to-date technology," and Eleanor's role in the thematic storyline. *Id.* at 1020-22. Nothing in *Towle* requires some undetermined amount of time for a character to persist before an artist *first* obtains a copyright in a character. Indeed, "persistence" is not mentioned in the Court's three-factor test.

Disney has identified no authority that only characters that appear in sequels can receive copyright protection. It may be that a character's later iteration in a derivative work, if such exists, may help identify defining attributes of the original character. For example, changes in physical

appearance details may illuminate other character attributes. But the fact finder may also consider a character's originality, delineation, and distinctiveness based on just one work too.

The district court and Disney also ignore other problems with their fame-based persistence arguments. For example, neither the district court nor Disney offers any guidance on how many viewings are necessary to qualify a character for protection, or how many versions of the character must exist before the artist or the public would have a reasonable expectation that an original character qualifies for copyright protection. Nor does the district court or Disney even try to address why a standard for copyright protection should categorically favor dominant entertainment companies, like Disney, to the detriment of individual artists or smaller companies, like Daniels and Moodsters Co. Yet the Court can—and should—avoid all these concerns by reversing the district court, and applying the plain language of the Copyright Act that copyright protection "subsists upon creation" when the original character is first expressed in a "fixed medium."

Disney spends little space trying to defend the district court's analysis of the Second Generation Moodsters. Disney Br. at 42-43. In doing so, Disney ignores—as did the district court—that protected characters may change physical appearances. Opening Br. at 45-47 (citing among others *Towle*, 802

F.3d at 1020-22). Indeed, Disney makes no argument that the minor stylistic changes seen in the different generations of The Moodsters surpass more dramatic changes in Batman, James Bond, and Eleanor that this Court has shown do not evidence unprotectability. *See id.* At a minimum, these changes in appearance, and the larger consistent defining attributes detailed in the Amended Complaint, present issues of fact that the district court should not have decided on Disney's Rule 12 motion. Again, the district court—and now Disney—ignored these fact-based issues when it denied Moodsters Co. its day in court.

### D. Disney's new and conclusory argument regarding the "story being told" standard fails to show an implausible claim.

Disney concedes that the "story being told" standard remains good law. Disney Br. at 26. Disney tries to avoid that standard by contending that it only applies to literary characters. *Id.* But Disney fails to explain how this standard— more exacting than the standard for animated characters—is irrelevant. *Cf.* Opening Br. at 39, 49. As Moodsters Co. pointed out earlier, that The Moodsters characters satisfy the heightened standard underscores the district court's error concluding that those characters do not meet the lower standard set forth in *Towle*. The district court's repeated references to the "rigorous" standard of *Towle*, ER3, ER8, ER19, are inconsistent with

Moodsters Co. alleging a plausible claim under the heightened "story being told" standard and signals its misreading and misapplication of *Towle*.

Disney offers only a conclusory argument that the Moodsters characters do not satisfy the "story being told" standard. Disney Br. at 46. But this conclusion, raised for the first time now, ignores that Moodsters Co. need only plead a plausible claim, not prove its case. And Moodsters Co. pled a plausible claim for the same reasons the district court in *Air Pirates* found many of Disney's own characters met the test: "the plot of the piece not only centers around the character but is quite subordinated to the character's role [and] [t]he principal appeal of each of the plaintiff's works to the primary audience of children for which they were intended lies with the character and nothing else." *Walt Disney Prods. v. Air Pirates*, 345 F. Supp. 108, 113 (N.D. Cal. 1972). Just as a Mickey Mouse show would not exist without Mickey Mouse as a character, so too would *The Moodsters* program die without The Moodsters characters.

## II.     The district court should not have dismissed Daniels' breach of implied-contract claim.

### A.     The publication date on the bible registration form does not establish the material was unconditionally publicly distributed before an implied contract with Disney arose.

Disney defends the district court's decision based on only a *portion* of the legal definition of publication. Daniels does not dispute that a work is

"published" when copies are distributed to the public with no explicit or implicit restrictions on disclosure of its contents. But that is not what happened with *The Moodsters* bible, and it is only one basis for "publication." Disney ignores the *other* part of the legal definition of publication, which *also includes* "offering to distribute copies or phonorecords to a group of persons *for purposes of further distribution* …." 17 U.S.C. §101 (emphasis added).[7] This latter part of the "publication" definition does not require public distribution or public display. Nor does it preclude that the offer to potential distribution partner(s) be subject to conditions, like compensation for any future use of the work. Disney failed to offer any basis for the district court's inference that the 2005 publication met the first part of the definition, as opposed to the latter. The district court erred when it drew inferences in Disney's favor.

The district court also erred when it resolved this fact issue on the pleadings. Disney has not identified or relied on any allegation from the pleadings to support a finding of unrestricted public disclosure of any pitch materials before Daniels pitched Disney. Disney cannot argue otherwise without drawing inferences in its favor (and against Daniels) and contrary to the actual allegations in the Complaint. *See* Opening Br. at 50-51. Indeed, Disney offers no defense of the district court's decision under the portion of the

---

[7] *See also* Disney Br. at 64 (quoting H.R. Rep. No. 94-1476, at 138 (1976)).

publication definition that Daniels has relied on. Neither the district court, nor Disney, has any basis to contend the bible was anything more than a "pitch" material for seeking a partner for future public distribution. Opening Br. at 51; ER81 ¶48.

Disney misapplies the "incorporation by reference" doctrine as well. In *Khoja v. Orexigen Therapeutics, Inc.*, the same case that Disney cites in its footnote 17, this Court explained that, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." 899 F.3d 988, 1003 (9th Cir. 2018). Indeed, this Court

> reiterate[d] that it is improper to [accept the truth of matters asserted in incorporated documents] only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint. The incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage.

*Id.* at 1014. Thus, *even if* a "publication" date should only refer to a date of unconditional public availability (contrary to the actual legal definition) and Daniels had incorporated the document, the district court's decision violates this fundamental rule. The district court's assumption of November 8, 2005, as a date of unconditional public availability contradicts the allegations of the Complaint.

**B.** **Disney's arguments also misconstrue the consideration for a**
***Desny* contract and ignore that even public availability of ideas**
**does not prevent an implied contract.**

Disney misunderstands what constitutes consideration for a *Desny*

contract. The consideration is the service of conveying to Disney an idea

unknown to it, or providing materials expressing the idea. That consideration

exists even if an idea were otherwise somehow available to the public, like

through YouTube. Disney bases its arguments to the contrary on out-of-

context quotes from *Desny,* and arguments about consideration that California

courts have repeatedly rejected.

In *Desny*, the court reversed the grant of summary judgment to

defendants, and remanded for further proceedings on plaintiff's breach of

implied contract claim. *Desny v. Wilder*, 299 P.2d 257, 260-61, 278-79 (Cal.

1956). The court explained that even if plaintiff's detailed testimony showed he

had "blurted out" his idea to defendants' agent over the phone under

circumstances not yet suggesting he expected payment for it, defendants could

still be liable for use of his synopsis embodying his idea if the evidence at trial

showed defendant accepted the synopsis under circumstances showing bilateral

expectation of payment for use for profit despite already knowing about the

idea. *Id.* at 270-71, 273-74, 277 ("And the further fact, if it be a fact, that the

basic idea for the photoplay had been conveyed to defendants before they saw

plaintiff's synopsis, would not preclude the finding of an implied (inferred-in-fact) contract to pay for the manuscript, including its implemented idea, if they used such manuscript."). The breach of contract claim here similarly alleges Disney was offered— and accepted—materials reflecting Daniels' ideas and The Moodsters original expressive characters under circumstances indicating payment for Disney's use for profit. ER87-88, ER95-97. This alone states a plausible claim.

Nor has Disney identified any evidence in the record that *Disney* had already received knowledge of Daniels' ideas or the disclosed materials *before* the *conditional* disclosures to them. Even the district court recognized below that the complaint alleged contacts with Disney through which a contract could have been formed before any evidence of public disclosure of the pilot through YouTube. *See* ER315-316; *see also* ER14-15 (relying on the 2005 date on bible registration form, and acknowledging complaint alleges contacts with Disney in 2006 and 2007).

Moreover, *even if The Moodsters* materials had been available on YouTube before meeting with Disney, California courts recognize that the service of conveying an idea unknown *to the defendant* is valid consideration for an

implied-in-fact contract even if the idea is not novel or already known *to others*.[8]

The world is full of ideas that a producer with enough work or internet research may discover. Yet there is value in the service of directly disclosing good ideas to producers, saving them the work of trying to discover those ideas on their own.

> There is nothing unreasonable in the assumption that a producer would obligate himself to pay for the disclosure of an idea which he would otherwise be legally free to use, but which in fact, he would be unable to use but for the disclosure. … [T]he fact that the producer may later determine, with a little thinking, that he could have had the same ideas and could thereby have saved considerable money for himself, is no defense against the claim of the writer.

*Chandler v. Roach*, 319 P.2d 776, 781 (Cal. Ct. Ap. 1957) (internal quotations omitted). "The theatrical producer … may be dependent for his business life on the procurement of ideas from other persons" as "ideas are not freely usable by the entertainment media until the latter are made aware of them." *Desny*, 299 P.2d at 265 (internal quotation omitted). Thus disclosure of an idea unknown to a producer, even if known by others, "may therefore be consideration for a promise to pay" and a "person who can and does convey a valuable idea to a

---

[8] Disney's bold argument that Daniels "fails to challenge—or even acknowledge one of the grounds on which the district court dismissed the claim" is false. Disney Br. at 2-3. Daniels detailed in the Opening Brief, at 52-53, that even had there been public availability the claim still should not fail. Moreover, as pointed out above, the district court decision rests on the 2005 date from the copyright form given it acknowledges pre-2007 contacts with Disney.

producer who commercially solicits the service or who voluntarily accepts it knowing it to be tendered for a price should likewise be entitled to recover." *Id.* at 266-67; *see also Blaustein v. Burton*, 88 Cal. Rptr. 319, 330 (Cal. Ct. App. 1970) (same); *Faris v. Enberg*, 158 Cal. Rptr. 704, 708 (Cal. Ct. App. 1979) ("no matter how slight *or commonplace* is the material or idea which is revealed, the courts will not question the adequacy of the consideration") (emphasis added). Thus, disclosure of Daniels' ideas to Disney, unknown to Disney at that time, served as valid consideration.

Disney's reliance on *dicta* from the unpublished district court *Quirk* decision does not overrule this long-standing California precedent. *See* Opening Br. at 54-55. Disney similarly misinterprets the unpublished district court *Alexander v. Metro-Goldwyn Mayer Studios Inc.* decision. That decision dismissed the implied contract claim only after pointing out the plaintiff made no allegations of circumstances of disclosure of the idea to defendants that could show payment was expected or defendants accepted the disclosure. 2017 U.S. Dist. LEXIS 214497, *20-23 (C.D. Cal. Aug. 14, 2017). Unlike the *Alexander* plaintiff's mere tweets and internet postings to millions of people unresponded to by any defendant, *id.* at *22-23, the complaint here alleges discussions with specific individuals at Disney who not only accepted the materials conditionally offered but then also shared them with other Disney

executives and requested additional material. ER88. The many dialogues, exchanges of materials, and continued sharing within Disney of *The Moodsters* materials alleged in the complaint here support a plausible implied contract claim, unlike in *Alexander* with no allegation "of any exchange or dialogue with Defendants." 2017 U.S. Dist. LEXIS 214497at *23.

Disney has no excuse for withholding compensation from Daniels. Events after the contract arises such as an artist trying to profit off their own ideas or creative works in other ways—whether in 2007 or 2015—, does not negate the original consideration of the valuable service of directly conveying the idea to the producer for his potential use. Nor has Disney identified any support for its new argument that its performance was excused. Disney received and profited immensely from using Daniels' idea underlying The Moodsters, and no collateral events vitiated Disney's obligations to compensate Daniels. *See* ER92-95.

**C.     Disney's statute of limitations alternate ground for affirmance also fails.**

Disney half-heartedly suggests in a footnote that the Court may affirm the district court's dismissal based on the statute of limitations. Disney Br. at 58 n.23. The district court did not rule that this fact-based issue could support dismissal on the pleadings, and neither should this Court. *See* ER14. In *Benay v. Warner Bros. Entm't, Inc.*, like this case, the plaintiffs "filed their claim exactly

two years after the release of the Film." 607 F.3d 620, 633 (9th Cir. 2010). This Court affirmed the district court's decision denying summary judgment and rejecting the defendants' arguments that the breach of contract claim accrued before that release. *Id.* When the breach claim accrues depends on the implied contract and resulting obligation to pay. *Id.* (quoting *Blaustein*, 9 Cal. App. 3d at 185, 186). As explained in *Blaustein*, "the trier of fact might conclude that the date of release of the picture to the general public was the use intended by the parties to trigger respondents' obligation to pay." 88 Cal. Rptr. at 336; *see also Anderson*, 11 U.S.P.Q.2d at 1162-63.

# CONCLUSION

The parties' briefing on appeal shows hotly contested issues of fact underlying both the copyright and contract claims. But the district court's decision below offered no justice because the law does not allow the court to resolve fact issues on the pleadings. Moodsters Co. asks the Court to reverse and remand.

Dated: December 14, 2018                    Respectfully submitted,

By: *s/ Patrick M. Arenz*
       ROBINS KAPLAN LLP
       **Ronald J. Schutz**
       **Patrick M. Arenz**
       **Brenda L. Joly**
       2800 LaSalle Plaza
       800 LaSalle Avenue
       Minneapolis, MN 55402-2015
       (612) 349-8500
       *Attorneys for Plaintiffs-Appellants Denise Daniels and The Moodsters Company*

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s):** <u>18-55635</u>

I am the attorney or self-represented party.

**This brief contains   <u>6,998</u>   words,** excluding the items exempted by Fed.

R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one)*:
[ ] it is a joint brief submitted by separately represented parties;
[ ] a party or parties are filing a single brief in response to multiple briefs; or
[ ] a party or parties are filing a single brief in response to a longer joint
brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>*s/Patrick M. Arenz*_____</u>   **Date** <u>December 14, 2018</u>

**CERTIFICATE OF SERVICE**

I certify that on December 14, 2018, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the

Ninth Circuit by using the appellate CM/ECF system. I certify that all

participants in the case are registered CM/ECF users and that service will be

accomplished by the appellate CM/ECF system.

December 14, 2018                          *s/Patrick M. Arenz*
                                           Patrick M. Arenz
                                           *Counsel for Appellants*

89375265.3